**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **MICHAEL A. NEVILLE, et al.** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | Civil No. PJM 06-467 |
| | * | |
| **TERMINIX INTERNATIONAL** | * | |
| **COMPANY L.P., et al.,** | * | |
| | * | |
| **Defendants.** | * | |

**MEMORANDUM OPINION**

Before the Court is a Motion to Compel Arbitration and Stay Proceedings filed by Defendants Terminix International Co., L.P.; Terminix International, Inc.; The Servicemaster Co.; Mark A. Harne; Greg Orr; and Kathy Vasser (collectively "Terminix"). For the reasons set forth below, the Court GRANTS Defendants' Motion and STAYS this action.

**I.**

This case arises from Terminix's firing of Plaintiff Michael Neville. Neville, who was employed as a service technician out of Terminix's branch in Clinton, Maryland, was terminated on September 6, 2005, for falsifying documents, a charge he denies. On January 10, 2006, Neville and his wife Angela filed suit in the Circuit Court for Prince George's County, alleging race discrimination in violation of 42 U.S.C. § 1981, breach of contract, workplace defamation, negligent misrepresentation, wrongful termination, violation of the Employment Retirement Income Security Act, violation of the Family Medical Leave Act, interference with economic relationship or prospective advantage, intentional infliction of emotional distress, and loss of consortium. Terminix

1

removed the case to this Court on February 21, 2006, and filed the instant Motion on March 31, 2006.

Terminix's argument is straightforward. It points to an Employment Agreement and an Arbitration Agreement (collectively "the Agreements") that the parties executed on February 3, 2005, which it says bind Neville to arbitrate his claims. The Employment Agreement contains the following arbitration clause:

> **Agreement to Mediate and Arbitrate.** The Employer and Employee agree that, to the fullest extent permitted by law, any and all disputes between them will be submitted to mediation upon terms mutually agreeable to both parties. In the event the parties do not resolve such controversies through mediation, then the Employer and Employee agree that, to the fullest extent permitted by law, any and all controversies between them will be submitted for resolution to binding arbitration in accordance with the attached Arbitration Agreement, which is incorporated herein by reference. The parties understand and agree that in the event mediation is unsuccessful, then arbitration will be the exclusive forum for resolving disputes between them, including statutory claims and all disputes arising out of the employment relationship and the termination of such relationship. The Employee and Employer expressly waive their entitlement, if any, to have controversies between them decided by a court or jury. The attached Arbitration Agreement is incorporated herein.

The Arbitration Agreement provides, in pertinent part:

> Any dispute arising out of Employee's employment with Employer, including termination of employment and all statutory claims, will be submitted to binding arbitration administered by the American Arbitration Association….

The Arbitration Agreement then sets forth in greater detail some of the rules governing arbitration, i.e., selection of the arbitrator, the arbitrator's authority, etc.

Neville responds with two arguments: (1) that he did not voluntarily agree to the Agreements, i.e., that he was unlawfully coerced to execute them, and (2) that Terminix did not furnish adequate consideration in exchange for his promise to arbitrate.

**II.**

Section 2 for the Federal Arbitration Act ("FAA"), which is the basis for Terminix's Motion, provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [1]

This reflects a federal policy favoring arbitration. *See Discover Bank v. Vaden*, 396 F.3d 366, 372 (4th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (U.S. 1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.")). Section 4 of the FAA allows a party to petition the district court for an order compelling arbitration, which the court shall issue "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." Section 3 authorizes the court to stay judicial proceedings pending the outcome of arbitration.

A party seeking to compel arbitration pursuant to the FAA must show "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

---

[1] "It is settled that the provisions of the FAA, and its policy favoring the resolution of disputes through arbitration, apply to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes, including Title VII of the Civil Rights Act." *Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 301 (4th Cir. 2002).

These requirements are not in dispute. What is in issue is the validity of the Agreements. Neville argues that his promise to arbitrate is unenforceable because he was coerced into executing the Agreements and because Terminix did not provide sufficient consideration for that promise.

### III.

The first question the Court must answer–one that neither party has addressed in a meaningful way–is whether it is for the Court or for an arbitrator to determine whether Neville is bound to arbitrate this dispute.

The Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), is seminal. There the plaintiff argued that it was not bound to arbitrate because it had been fraudulently induced to enter into the contract that contained the arbitration clause at issue. The Court held that the issue of fraud in the inducement was one for the arbitrator because the plaintiff was not challenging the agreement to arbitrate but the contract as a whole:

> If the claim is fraud in the inducement of the *arbitration clause itself*--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of *the contract generally*.... We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Prima Paint*, 388 U.S. at 403-04 (emphasis added).

Thus, "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and...where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." *Id.* at 402.

Since *Prima Paint*, courts have held that it is not so broad as to require that all challenges to "the contract as a whole" must go to the arbitrator. They have distinguished between void and

4

voidable contracts. *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001) (citing *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 106-07 (3d Cir. 2000); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991)). Where the allegation is that the arbitration clause is unenforceable because the contract containing it is *void*, i.e., "one that produces no legal obligation," courts have held that *Prima Paint* does not apply and the issue is for the court. *See Sphere Drake*, 263 F.3d at 31-32. On the other hand, where the allegation is that the arbitration clause is unenforceable because the contract containing it is *voidable*, i.e., "an agreement that 'unless rescinded...imposes on the parties the same obligations as if it were not voidable,'" they have held that *Prima Paint* does apply and the question is for the arbitrator. *Id.* (citing 1 Williston on Contracts § 1.20, at 50 (4th ed., 1990)). In the former category are cases where a party claims to have never actually signed the agreement that contains the arbitration clause, *see Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992); *Gregory v. Interstate/Johnson Lane Corp.*, 1999 U.S. LEXIS 20862 (4th Cir. 1999); where a party claims that the agreement was signed by someone without authority to bind them, *see Three Valleys*, 925 F.2d at 1140-41; *Sandvik AB*, 220 F.3d at 107; and where it is alleged that the party signing the contract lacked the mental capacity to assent, *see Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003). In the latter category are cases "where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract." *Three Valleys*, 925 F.2d at 1140 (citing Restatement (Second) of Contracts § 7 cmt. b). Put differently, the cases hold that *Prima Paint* is "limited to challenges seeking to *avoid* or *rescind* a contract...[it does not apply] to challenges going to the very existence of a contract that a party claims never to have agreed to." *Id.* The rationale is that "a party who contests the making of a

contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate." *Id.* at 1140-41.

Recently the Supreme Court decided *Buckeye Check Cashing, Inc. v. Cardegna*, 124 S. Ct. 1204 (2006). In considering "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality," *id.* at 1207, the Court disapproved of the void/voidable distinction. Plaintiffs in *Buckeye*, customers of a check cashing operation, had entered into various deferred-payment transactions. As part of these transactions, they executed contracts that contained arbitration clauses. When disputes arose, Plaintiffs sued in Florida state court, alleging that the contracts were void *ab initio* because they provided for usurious interest rates and violated various provisions of state law. The case made its way to the Florida Supreme Court, which held that it was for a court, not an arbitrator, to determine whether the contracts were void. The Supreme Court reversed, reaffirming the rule of *Prima Paint* that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 1209. The Court concluded that the Florida Supreme Court was wrong to rely on the distinction between void and voidable contacts, since it is "irrelevant" under *Prima Paint. Id.* The Court did not, however, question the holdings of the cases discussed above, which found certain challenges to be outside *Prima Paint*'s reach:

> The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.

*Id.* at 1208 n.1 (citations omitted).

Under *Buckeye*, then, this Court must decide the type of challenge Neville is raising. *Buckeye* contemplates three different types of challenges. First, there are those that "challenge[] specifically the validity of the agreement to arbitrate." *Id.* at 1208. *Prima Paint* does not apply to these. Second, there are "challenges [to] the contract as a whole" which question "the contract's validity." As to these *Prima Paint* does apply. Third, there is a very narrow class of cases where the challenge is based on the question of "whether any agreement between the alleged obligor and obligee was ever concluded." *Prima Paint* does not apply to these.

## IV.

The Court turns to Neville's challenges.

He advances two arguments against arbitration. First, he alleges that he did not voluntarily execute the Agreements, i.e., that he was unlawfully coerced to execute them. Second, he argues that the Agreements are not enforceable because Terminix did not furnish adequate consideration in exchange for his agreement to arbitrate.

The matter is complicated somewhat by the fact that two agreements are involved. The first, the Employment Agreement, contains an arbitration clause along with a number of other provisions. The second, the Arbitration Agreement, is devoted entirely to the issue of arbitration, and is incorporated into the Employment Agreement by reference. The Court will treat the two agreements together.

Neville's first argument is essentially a claim of duress. He argues that "Terminix Management gave [him] a choice–i.e., sign the Agreements or get another job." He says he "did not execute the Agreements as a free and voluntary act of his will," and that he "was coerced into executing the Arbitration Agreement" by Terminix's threat. Given his shifting references to "the

7

Agreements" and "the Arbitration Agreement," and the fact that he fails to allege any coercive conduct by Terminix specific to the arbitration clause of the Employment Agreement or the Arbitration Agreement, the Court concludes that the duress claim is directed to "the contract as a whole" rather than the "'making' of the agreement to arbitrate." *See Prima Paint*, 388 U.S. at 404. His claim is not that duress caused him to *agree to arbitrate*, but that duress caused him *to execute the Agreements*, i.e., it goes to "the contract as a whole."

Moreover, the duress claim is not among the cases that *Buckeye* places outside the reach of *Prima Paint*, which comprehend "whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye*, 124 S. Ct. at 1208 n.1. There is no question that an agreement was concluded here; Neville says only that he should not be bound because he agreed under duress. As such, this is an issue for the arbitrator to decide. [2]

Neville's lack of consideration argument is a different matter. It purports to focus on "specifically the validity of the agreement to arbitrate," not "the contract as a whole." Thus he alleges that "*the Arbitration Agreement* is unsupported by consideration," that his "continued employment with Terminix is insufficient consideration for *the Arbitration Agreement*," that

---

[2] In addressing this claim, the arbitrator may wish to consider the following authorities: *Williams v. Parkell Prods., Inc.*, 2003 U.S. App. LEXIS 26270, at *3 (2d Cir. 2003) ("It is well-settled...that conditioning employment on the acceptance of an agreement to arbitrate disputes, including those arising under civil rights laws, is not itself unlawfully coercive.") (citing *Circuit City v. Adams*, 532 U.S. 105, 123-24 (2001); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204-05 (2d Cir. 1999)); *Borg-Warner Protective Servs. Corp. v. Gottlieb*, 1997 U.S. App. LEXIS 15516, at *2 (9th Cir. 1997) ("We conclude that requiring execution of an arbitration agreement as a condition of continuing at-will employment does not constitute economic duress or coercion."); *Morales v. Rent-A-Center, Inc.*, 306 F. Supp. 2d 175, 181 (D. Conn. 2003) ("It is a well-established principal that 'despite the inequality in bargaining power between the employers and employees, conditioning employment upon an agreement to arbitrate does not by itself constitute duress.'"(citations omitted)).

8

"Terminix's promise to submit to *arbitration* is illusory," and that he "received nothing in signing *the Arbitration Agreement* that he had not already received." (emphasis added).  Accordingly, the issue is properly for the Court to decide, not the arbitrator.

The Court finds no merit in this argument.  First, Terminix does not argue, as Neville would have it, that its continued employment of Neville was sufficient consideration for his agreement to arbitrate, a proposition that the Court of Appeals of Maryland rejected in *Cheek v. United Healthcare*, 835 A.2d 656 (Md. 2003).  Instead, Terminix argues that its binding mutual promise to arbitrate is sufficient.  This has been deemed adequate consideration.  *See id.* at 661; *Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 553-55 (Md. 2006); Restatement (Second) of Contracts § 75.  Neville's suggestion that this promise of mutuality is somehow "illusory" does not advance his cause.  Presumably he is again relying on *Cheek*, which held under the circumstances of that case that such a promise was "illusory."  But the arbitration agreement in *Cheek* was fundamentally different from the Arbitration Agreement that Neville signed.  In *Cheek*, the Court of Appeals concluded that the employer's promise to arbitrate was illusory because the arbitration agreement reserved "the right to alter, amend, modify, or revoke the [Arbitration] Policy at [the employer's] sole and absolute discretion at any time with or without notice." *Cheek*, 835 A.2d at 662.  The Arbitration Agreement in this case contains no such provision.  Both parties are bound by the clause; neither one may alter, amend, modify or revoke it. The parties stand on equal footing.  In no sense was Terminix's promise illusory.  *See Holloman*, 894 A.2d at 553-55.  Terminix gave sufficient consideration in exchange for Neville's agreement to arbitrate.

**V.**

For the foregoing reasons, the Court GRANTS Terminix's Motion to Compel Arbitration and Stay Proceedings.

A separate Order will be ENTERED.

                                                    /s/
                                **PETER J. MESSITTE**
July 28, 2006                 **UNITED STATES DISTRICT JUDGE**