**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **MICHAEL A. NEVILLE, et al.** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. PJM 06-467 |
| | * | |
| **TERMINIX INTERNATIONAL** | * | |
| **COMPANY L.P., et al.,** | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Before the Court are Cross-Motions to Reopen this case, namely Plaintiffs' "Motion to Lift the Stay as to Non-Arbitrable Claims" and Defendants' "Motion to Lift the Stay for the Purpose of Enforcing the Court's July 28, 2006 Order." For the reasons set forth below, Plaintiffs' Motion to Lift the Stay as to Non-Arbitrable Claims is DENIED IN PART. Defendants' Motion to Lift the Stay for the Purpose of Enforcing the Court's July 28, 2006 Order is GRANTED IN PART AND DENIED IN PART.

**I.**

The case arises from Terminix's firing of Plaintiff Michael Neville. Neville, who was employed as a service technician out of Terminix's branch in Clinton, Maryland, was terminated on September 6, 2005, for falsifying documents, a charge he denies. On January 10, 2006, Neville and his wife Angela filed suit in the Circuit Court for Prince George's County, alleging race discrimination in violation of 42 U.S.C. § 1981, breach of contract, workplace defamation, negligent misrepresentation, wrongful termination, violation of the Employment Retirement Income Security Act, violation of the Family Medical Leave Act, interference with economic relationship or

1

prospective advantage, intentional infliction of emotional distress, and loss of consortium. In addition to suing Neville's direct employer, Terminix, the Nevilles sued three Terminix managers -- Mark Harne (Clinton Branch Manager), Greg Orr (Regional Vice President) and Kathy Vasser (Operations Manager) -- as well as ServiceMaster, the parent company of Terminix. Defendants removed the case to this Court on February 21, 2006.

On July 28, 2006, this Court granted Defendants' Motion to Compel Arbitration, based on arbitration clauses in two agreements between Neville and Terminix ("the Agreements"). The Employment Agreement contains the following clause:

> **Agreement to Mediate and Arbitrate.** The Employer and Employee agree that, to the fullest extent permitted by law, any and all disputes between them will be submitted to mediation upon terms mutually agreeable to both parties. In the event the parties do not resolve such controversies through mediation, then the Employer and Employee agree that, to the fullest extent permitted by law, any and all controversies between them will be submitted for resolution to binding arbitration in accordance with the attached Arbitration Agreement, which is incorporated herein by reference. The parties understand and agree that in the event mediation is unsuccessful, then arbitration will be the exclusive forum for resolving disputes between them, including statutory claims and all disputes arising out of the employment relationship and the termination of such relationship. The Employee and Employer expressly waive their entitlement, if any, to have controversies between them decided by a court or jury. The attached Arbitration Agreement is incorporated herein.

The Arbitration Agreement provides, in pertinent part:

> Any dispute arising out of Employee's employment with Employer, including termination of employment and all statutory claims, will be submitted to binding arbitration administered by the American Arbitration Association….

The parties thereafter submitted the issues in the case to the American Arbitration Association. Arbitrator Ronald Birch, however, *sua sponte* dismissed certain claims because they were made against individuals or companies not party to the Agreements and therefore were beyond his jurisdiction as an arbitrator. The following counts were dismissed: Count III (Defamation against Harne, Orr and Vasser), Count X (Loss of Consortium) and Counts I, II, IV, V, VI, VII, VIII

and IX to the extent they assert a claim against a non-signatory to the Agreements. The Arbitrator's reasoning was that Harne, Orr, Vasser and ServiceMaster, as well as Plaintiff Angela Neville, never signed the Agreements and thus could not be bound to arbitrate disputes.

The parties have now both filed Motions to Reopen, but for different reasons. The Nevilles seek to bring the counts dismissed by the Arbitrator back to this Court. Defendants claim that the Arbitrator's decision was erroneous and should be overturned because all of Plaintiffs' claims should be litigated in the arbitration. Defendants argue that the Agreements are not limited, as the Arbitrator ruled, to disputes exclusively between the signatories because the Defendants other than Terminix are third-party beneficiaries of the Agreements which Neville signed. Plaintiffs counter that, as a general matter, nonsignatories to a contract should not be bound to its terms and, in this particular instance, the other Defendants are not third-party beneficiaries of the Agreements. In any event, Plaintiffs argue, the Agreements cannot be applied to Mrs. Neville's loss of consortium claim.

**II.**

As an initial matter, the parties seem to agree that it is the Court, and not the arbitrator, who determines whether there is an agreement to arbitrate the subject matter of the dispute. *Glass v. Kidder Peabody & Co.,* 114 F.3d 446, 453 (4th Cir. 1997); *Mayor and City Council of Baltimore v. Baltimore City Firefighters Local 734,* 136 Md. App. 512, 521 (2001) ("It is for the court to decide whether there exists an agreement to arbitrate on the subject matter of the dispute"). Indeed, as Plaintiffs point out, when interpreting an arbitration agreement, the Court must sever the arbitrable issues in a complaint from the non-arbitrable claims. *Summer Rain v. Donning Co. Pub., Inc.,* 964 F.2d 1455, 1460 (4th Cir. 1992).

**III.**

The Court is faced with two groups of non-signatories to the contract: In one group are Terminix's agents – Harne, Orr, Vasser and ServiceMaster. In the other is Plaintiff Angela Neville. Different analyses are warranted as to each.

**A.**

The Court first considers the Arbitrator's dismissal of the claims against Defendants Harne, Orr, Vasser and ServiceMaster.

The Court is unpersuaded by the Arbitrator's conclusion that these Defendants, because they were not direct signatories to the contract, cannot avail themselves of binding arbitration. Terminix's obligations to Neville depend entirely on what Terminix's agents supposedly did when dealing with him. It cannot be the case that Terminix goes forward in one forum (arbitration) while identical claims against its agents go forward in a separate forum (court). *See Dunmire v. Schneider*, 481 F.3d 465, 467 (7th Cir. 2007) ("Morgan Stanley's obligations to Dunmire depend on what its agents did (or omitted) when dealing with his account"); *Pritzker v. Merrill Lynch,* 7 F.3d 1110, 1121 (3rd Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements"). Indeed, the agreement for which Terminix bargained would be of little value to Terminix if the agreement did not extend to the very agents that might prompt litigation against it.[1]

---

[1] The agency relationship between Terminix and its supervisors Harne, Orr and Vasser is obvious. The Court also finds an agency relationship with ServiceMaster, Terminix's corporate parent. *See Pritzker*, 7 F.3d at 1122 ("For analogous reasons, we find that the claims against . . .the corporate sister . . . likewise fall within the scope of the arbitration agreements. Agency logic has been applied to bind non-signatory business entities to arbitration agreements").

Apart from the logic of a unitary proceeding, it is clear from the language of the Agreements that Terminix wanted "all disputes" pertaining to the employment relationship adjudicated in a single forum and without a jury. Arbitration of all of the claims against Terminix and its agents will obviously prevent the possibility of inconsistent adjudications. *See Dunmire*, 481 F.3d at 468 ("Dunmire is trying to roll the dice repeatedly and take the outcome most favorable to him; that skews the odds compared with a single arbitration . . ."). The notion that Terminix might have wanted to defend itself and its managers against Neville's various employment claims in multiple forums borders on the absurd. The Court is unpersuaded by Plaintiffs' argument that the parties did not intend to confer third-party benefits on Terminix's agents when they signed the contract and thus that no third-party beneficiary contract was formed under Maryland law. Applying standard agency principles, courts have routinely held that employees are third-party beneficiaries of arbitration clauses like the one before the Court. *See Dunmire*, 481 F.3d at 467 ("[C]ourts regularly treat employees as third-party beneficiaries of arbitration clauses such as this"); *Pritzker*, 7 F.3d at 1122 ("[A]rbitration agreements may be upheld against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory"); *Letzia v. Prudential Bache Sec.,* 802 F.3d 1185, 1187 (9th Cir. 1986) ("Other circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles").

Nor is requiring arbitration of Neville's claims against Terminix's agents in contravention of the rule that "nothing in the [Federal Arbitration Act] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in an agreement." *EEOC v. Waffle House, Inc.,* 534 U.S 279, 289 (2002). The issues to be arbitrated are precisely those that were

5

contemplated by the Agreements, which make clear that all employment-related disputes were to be arbitrated: "the parties understand that . . . this Agreement applies to all claims, including, but by no means limited to, claims for breaches of any contract (express or implied), discrimination, torts, and/or claims based upon any federal, state or local . . . law". Defendants' agents are parties covered in the agreement. Most significantly, the party to be bound in this case is Neville, whose signature is on the Agreements. As Defendants point out, Defendants are not the ones contesting whether they are bound by the agreements; it is Neville who is disputing that he is bound. He will in no way be prejudiced by the arbitration.

Accordingly, the following claims dismissed by the Arbitrator are hereby REINSTATED and are ORDERED BACK to arbitration: Count III (Defamation), and to the extent they were dismissed by the Arbitrator, Counts I, II, IV, V, VI, VII, VIII and IX.

**B.**

The Court turns to Angela Neville's claim for loss of consortium. The Court agrees that she is not necessarily bound by the employment contracts executed by her husband and therefore she may not be compelled to arbitration.

However, the question of severing Mrs. Neville's claim is complicated. Reading the Agreements literally, it may be said that Mr. Neville agreed to arbitrate his "portion" of the loss of consortium claim because he agreed to arbitrate all issues growing out of his employment relationship with Terminix, whereas Mrs. Neville did not agree to arbitrate her "portion" of the loss of consortium because she was not a signatory to the contract. But loss of consortium is not a severable cause of action; it is a joint one: "When either husband or wife claims loss of consortium . . . that claim can only be asserted in a joint action for injury to the marital relationship." *Deems*

6

*v. Western Maryland Ry. Co.*, 231 A.2d 514, 525 (Md. 1967); *See also Owens-Illinois v. Cook, et al.*, 872 .2d 969, 980 (Md. 2005) ("Such interests are so interdependent that injury to them is essentially incapable of separate evaluation as to the husband and wife"). Further complicating the matter, the joint claim must be tried concurrently with the underlying cause of action. *See Deems* ("That action is to be tried at the same time as the individual action of the physically injured spouse").

Beyond this, additionally, the viability of the loss of consortium claim is itself questionable, given the traditional application of the doctrine to claims involving *physical* injury and not simply those that arise out of contract disputes. *See Deems,* 231 A.2d at 525 (defining the boundaries of the loss of consortium claim as "when either husband or wife claims loss of consortium by reason of physical injuries sustained by the other as the result of the alleged negligence of the defendant"). Clearly this is not a case that presents the paradigmatic type of injuries (physical) stemming from the typical kind of wrong (negligence).

Mrs. Neville appears to be faced with something of a Hobson's choice. Her husband must arbitrate such loss of consortium claim as he may have. But if she declines to join him, his claim will necessary be denied, which would presumably have preclusive effects in any litigation that he and she might jointly attempt to bring thereafter. If she joins the arbitration (which she may do) - then assuming there is any viable claim for loss of consortium in this kind of case (a questionable proposition), she at least will have an opportunity to prevail. The decision is ultimately Mrs. Neville's. While the Court cannot compel her to an arbitration process to which she never agreed, the Court also cannot assert jurisdiction over the loss of consortium claim because *Mr.* Neville's agreement to arbitrate necessarily means that he must arbitrate the claim (and thus the claim could

not be filed jointly in this Court). Accordingly, while the Court does not grant Defendants' motion as to Mrs. Neville's claim, it DENIES Plaintiffs' Motion to reopen the case and assert jurisdiction over it.

**IV.**

For the foregoing reasons, Plaintiffs' Motion to Lift the Stay as to Non-Arbitrable Claims is DENIED. Defendants' Motion to Lift the Stay for the Purpose of Enforcing the Court's July 28, 2006 Order is GRANTED IN PART AND DENIED IN PART.

A separate Order will be ENTERED.

July 25, 2007

                               /s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**